*13 OPINION.
Littleton :
The question presented is whether the Commissioner erred in holding that the petitioner was not entitled to be classified *14 as a personal service corporation during the years in question within the meaning of section 200 of the Revenue Act of 1918.
The petitioner contends that this case comes squarely within the decision of the Board in the Appeal of Bryant & Stratton Commercial School, Inc., 1 B. T. A. 32, and that its income was not materially produced by capital, but was ascribable primarily to the activities of the principal stockholders. Whether a corporation is entitled to be classified as a personal service corporation must in each instance be decided on the facts established. In the opinion of the Board, the facts in this case clearly distinguish it from the Bryant & Stratton appeal. The record shows that in 1919 petitioner received $157,889.65 as tuition and expended for advertising, catalogues and soliciting $32,485.23. The amount expended for advertising was 50 per cent greater than the net income of $21,-979.82 for the year. The percentage of tuition paid out for advertising in the Bryant & Stratton appeal was less than 9 per cent, whereas in this proceeding such expenditure is shown to have been approximately 21 per cent.
This comparison brings out one of the striking differences between the two institutions. During the year 1919 the Bryant & Stratton School received a gross income from the sale of books and stationery of $3,846.45. This gross income represented a slight advance over cost to cover maintenance of the department. In the instant case, the gross income from books and stationery was $6,441.91, of which more than 50 per cent represented net profit. A large portion of this profit arose from selling books written by Powers and Stevens and published by the Metropolitan Textbook Co., all of the stock of which was owned by the principal stockholders of the. petitioner. In addition to this net profit from the sale of the books, the petitioner received $495.38 from its investments in the textbook company. Of the three principal officers of the petitioner, Reynolds had the chief responsibility and was the active man in conducting the affairs ‘of the textbook company. During 1918 he was paid a salary of $1,000 by petitioner and in 1919 it paid him no salary. However, he was paid a salary of $3,500 each year by the textbook company. He was actively engaged in the affairs of both corporations and devoted about one-half of his time to each. The two corporations were owned by the same three men who were in a position to adjust their salaries between the two corporations as they might desire. The result of the arrangements was that the textbook company paid all of Reynolds’ salary in 1919 for his combined services. The petitioner thus profited to the extent of about $1,750 from its relation with the textbook company.
The Bryant & Stratton School, upon the decision of whose appeal the petitioner relies, chose to sell stationery and books to its students merely as a matter of convenience and without any net profit. *15 The petitioner elected to make a substantial investment in the company organized to publish its officers’ books and to make a profit from its dealings in those books. The profits from sales of stationery and books and in the investment in the textbook company aggregated approximately 25 per cent of the total net income of $21,979.82 for 1919, and the percentage was approximately the same for 1918. At the beginning of 1918, petitioner held notes aggregating $7,796.71 in the textbook company, which notes, less comparatively small payments, were held throughout 1918 and 1919 and produced revenue in both years.
At the end of the year 1918, petitioner carried in its balance sheet as an asset described as “South Side Investment, $8,410.40.” This item represented advances to Orr’s Business College, and was carried through the years 1918 and 1919. Orr’s Business College was a separate corporation and the investment was made for the purpose of profit. It also carried upon its balance sheet as an asset an item, described as “Lake View Leasehold,” at $7,000, and another item, described as “ Garfield Leasehold,” at a value of $9,000. It was the petitioner’s custom to lease more space than was necessary for its own purposes and to sublet the extra space. In the matter of investments, outside the primary functions of giving business instructions, the proceeding differs from the case cited in that petitioner had approximately $32,000 in such investments as compared with none in the case relied upon.
We are of opinion that capital was a material income-producing factor, and that the petitioner is not therefore entitled to classification as a personal service corporation under section 200 of the Revenue Act of 1918.
Order of redetermination will be entered on IS days’ notice, wider Rule 50.
Trammell concurs in the result only.